COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | No. 08-22-00201-CV |
| IN RE: | § | |
| | | AN ORIGINAL PROCEEDING |
| JORDAN FOSTER CONSTRUCTION, LLC, | § | |
| | | IN MANDAMUS |
| Relator. | § | |
| | § | |

## MEMORANDUM OPINION

Relator Jordan Foster Construction, LLC (Jordan Foster), files this petition for a writ of mandamus asking the Court to direct Judge Sergio Enriquez of the 448th Judicial District Court of El Paso County to grant its Rule 91a motion to dismiss the first-amended third-party petition filed by real-parties-in-interest O'Brien & Associates, Inc., John E. O'Brien, and Steffen Staiger (collectively referred to as O'Brien). We grant in part and deny in part.

## BACKGROUND

Jordan Foster's petition for a writ of mandamus stems from a lawsuit to which it was not initially named as a party. As plaintiff, First Texas Products Corporation (First Texas) filed a petition against O'Brien based on a contract under which First Texas hired O'Brien "to provide design and construction administrative services for a First Texas office, warehouse and

manufacturing facility located in El Paso, Texas (the Facility)." First Texas alleges that "construction proceeded under the negligent design, management and supervision of [O'Brien]." Since completion of construction, First Texas further alleges it "has discovered and determined that substantial and multiple latent construction defects exist in the [Facility], attributable to [O'Brien]'s negligence, breaches of the standard of care, and misconduct . . ." First Texas seeks to recover "all lawful damages" from O'Brien under theories of breach of contract, negligence, negligent misrepresentation, fraud by non-disclosure, breach of warranties, and violation of the Texas Deceptive Trade Practices Act. It also seeks exemplary damages from O'Brien.

O'Brien filed a third-party petition and a first-amended third-party petition (collectively, the third-party petition) naming Jordan Foster, amongst others, as a third-party defendant. In its third-party petition, O'Brien alleges that it "provided architectural services" for First Texas but "did not construct and [was] not responsible for the construction" of the Facility. It alleges that First Texas retained Jordan Foster to act as the general contractor of the Facility. O'Brien quotes several provisions in its third-party petition from a December 21, 2016, "Project Manual/Specification" it implies governs construction of the Facility. The following quoted provisions—which we take directly from the third-party petition—are relevant to resolution of this petition for writ of mandamus:

> §1.1.1. The Contract Documents . . . consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract . . .

> §3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

> §3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or

2

duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

§3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of Work under the Contract . . .

§3.5 The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit . . .

. . . .

§4.2.2 . . . The Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents . . .

§4.2.3 . . . The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for the acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the work.

O'Brien claims, as First Texas's "Contractor" for the construction of the Facility, Jordan Foster is "responsible for [the] alleged construction defects," which First Texas discovered after completion of construction. As a result, to the extent First Texas proves its case against O'Brien, O'Brien alleges it is entitled to recover from Jordan Foster the amount of damages attributable to Jordan Foster's own acts or omissions. It asserts three causes of action in support of its third-party petition:

3

(1) common-law indemnity, (2) statutory contribution under Chapters 32 and 33 of the Texas Civil Practice and Remedies Code, and (3) breach of an express warranty.

Jordan Foster filed a motion to dismiss under Rule 91a of the Texas Rules of Civil Procedure arguing that O'Brien's third-party claims against it are "baseless in law." Jordan Foster cited two documents in support of its motion that are not referenced in or attached to either First Texas's petition or O'Brien's third-party petition. First, it cited and included clips from a contract allegedly governing the relationship between First Texas and Jordan Foster. The clips, according to Jordan Foster, show that O'Brien is not a party to the contract and that the contract expressly disclaims any third-party beneficiaries. The second document Jordan Foster cites to, and again includes a clip of, is a certificate of substantial completion it claims shows construction of the Facility was completed on January 5, 2018.

After two hearings on the motion, the trial court denied Jordan Foster's Rule 91a motion. Jordan Foster filed a motion for the trial court to reconsider its motion to dismiss, which the trial court also denied. This petition for a writ of mandamus followed.

## MANDAMUS RELIEF

Jordan Foster presents a single issue in this petition for a writ of mandamus. It contends the Court should issue mandamus to correct the trial court's clear abuse of discretion for denying Jordan Foster's Rule 91a motion to dismiss O'Brien's third-party petition.

### A. Standard of review

Generally, mandamus will issue only to correct a clear abuse of discretion, or the violation of a duty imposed by law, and when an adequate remedy by appeal does not exist. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 207 (Tex. 2009); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A trial court abuses its discretion when "it reaches a decision

4

so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839. Said differently, because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts[,] . . . a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id*. at 840. Additionally, however, the mere fact that "an appellate remedy . . . may involve more expense or delay than obtaining an extraordinary writ" does not establish that the appellate remedy is inadequate. *Id*. at 842. Rather, "[t]he most frequent use [courts] have made of mandamus relief involves cases in which the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding). Consequently, the failure to establish either element defeats a petitioner's request for mandamus relief.

## B. Clear abuse of discretion

### 1. Rule 91a

To begin, Texas Rule of Civil Procedure 91a allows a party to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Darnell v. Rogers,* 588 S.W.3d 295, 302 (Tex. App.—El Paso 2019, no pet.)*.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* at 302-03. Courts apply "the Texas fair notice pleading standard, under which a petition is sufficient 'if it gives fair and adequate notice of the facts upon which the pleader bases his claim.'" *Id.* (quoting *Aguilar v. Morales*, 545 S.W.3d 670, 677 (Tex. App.—El Paso 2017, pet. denied)). Applying the fair notice standard to a Rule 91a motion to dismiss, we "must construe the pleadings liberally in the plaintiff's favor, look to the pleader's

intent, and accept as true the pleading's factual allegations." *Id.* "If a petition provides sufficient facts to give fair notice of the claim, then a motion seeking dismissal based on lack of a basis in fact should be denied." *Id.* (quoting *In re RNDC Texas, LLC*, No. 05-18-00555-CV, 2018 WL 2773262, at *1 (Tex. App.—Dallas June 11, 2018, orig. proceeding) (mem. op.)). "Similarly, if nothing in the pleading itself triggers a clear legal bar to the claim, then there is a basis in law and the motion should be denied." *Id.*

### 2. The scope of the claims and the mandamus record

In its petition for writ of mandamus, Jordan Foster asserts the trial court clearly abused its discretion in determining that O'Brien's third-party causes of action have a basis in law. Additionally, Jordan Foster affirmatively argues it does not owe contractual indemnification to O'Brien. Of note, O'Brien did not assert a claim for contractual indemnification in their third-party petition; and they expressly disclaim that right in their response to Jordan Foster's petition for mandamus relief. Naturally, we cannot consider whether a claim not made in the court below has a basis in law or fact under Rule 91a. As a result, we will not opine on Jordan Foster's contractual indemnification arguments. But we will consider the validity of each of the three claims asserted in O'Brien's third-party petition. As a preliminary issue, however, we first must address what evidence, if any, that may be considered by a court in the context of a Rule 91a motion.

In support of its Rule 91a motion, Jordan Foster embedded clippings of documents within the substance of its pleading. These clippings were taken from what it alleges is its contract with First Texas and from a certificate of substantial completion.[1] Neither of these documents is referenced or attached to either First Texas's petition or to O'Brien's third-party petition. Despite Rule 91a's direction that a "court may not consider evidence in ruling on the motion and must

---

[1] The clippings appear to be limited croppings of the documents such that certain signatures or portions are shown.

6

decide the motion based *solely* on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59," Jordan Foster urges this Court to consider this extrinsic evidence. Tᴇx. R. Cɪᴠ. P. 91a.6 (emphasis added). As support for its position, Jordan Foster cites to language from the Supreme Court of Texas's decision in *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 655 (Tex. 2020). It argues it is not possible to decide a Rule 91a motion "without considering the motion itself, in addition to the plaintiff's pleadings." Jordan Foster appears to be arguing that *Bethel* permits a court to consider new evidence so long as it is included in a Rule 91a motion. Because Jordan Foster misreads *Bethel*, we disagree.

In *Bethel*, the Supreme Court considered whether a Rule 91a motion can be based on an affirmative defense raised in a defendant's motion to dismiss. *Id.* at 654-55. In finding that it could, the *Bethel* court held "that Rule 91a limits the scope of a court's factual, but not legal, inquiry." *Id.* at 655. "Again," the Court continued, "the rule limits the scope of the court's factual inquiry— the court must take the 'allegations' as true—but does not limit the scope of the court's legal inquiry in the same way." *Id.* Indeed, it concluded that if an affirmative defense is not "conclusively established by the facts in a plaintiff's petition" then the defense is "not a proper basis for a motion to dismiss." *Id.* at 656.

Here, Jordan Foster is not asking this Court to consider an affirmative defense established by O'Brien's pleadings. Rather, it asks that we consider new evidence, arguing it negates O'Brien's pleaded allegations. The cited evidence may ultimately do just that. It may not. Regardless, when analyzing a Rule 91a motion, we cannot consider evidence and must decide the motion "solely on the pleading of the cause of action." Tᴇx. R. Cɪᴠ. P. 91a.6. Both documents, that is, the contract between Jordan Foster and First Texas, as well as the certificate of completion,

7

were neither attahced to nor referenced in either First Texas's petition or O'Brien's third-party petition. Consequently, they may not be considered as support for the Rule 91a ruling.

3.    *Analysis*

a.    <u>Common-law indemnity claim</u>

Jordan Foster argues that "Texas recognizes common law indemnity only in extremely limited situations." And because the facts of this case do not support any of the recognized situations, the trial court abused its discretion in not dismissing O'Brien's common-law indemnity claim. We agree with Jordan Foster.

Texas no longer recognizes common-law indemnity except in "products liability actions to protect an innocent retailer in the chain of distribution" or "in negligence actions to protect a defendant whose liability is purely vicarious in nature." *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 833 (Tex. App.—Dallas 2011, no pet.) (citing *Aviation Office of Am., Inc. v. Alexander and Alexander of Texas, Inc.*, 751 S.W.2d 179, 180 (Tex. 1988)). O'Brien argues it has pled sufficient facts to establish "a vicarious liability relationship" between it and Jordan Foster. Specifically, O'Brien claims that First Texas is attempting to hold it "responsible for construction issues" caused by Jordan Foster's acts or omissions. And that by alleging that it was the "Construction Manager[]" for the project, according to O'Brien, First Texas is alleging that it was Jordan Foster's principal.

O'Brien, however, misunderstands the nature of vicarious liability. That principle requires a defendant, through no act of its own, "to pay for the negligence of another defendant based solely on the relationship between the two defendants." *Astra Oil Co., Inc. v. Diamond Shamrock Refining Co., L.P.*, 89 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2002, no pet.). This requires a showing of a principal/agency or surety relationship. *See American Alloy Steel, Inc. v.*

8

*Armco, Inc.*, 777 S.W.2d 173, 175 (Tex. App.—Houston [14th Dist.] 1989, no pet.) ("Those cases that do recognize an implied right of indemnification do so on the basis of an agency of surety principles."). Under well established law, "[a]n essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent." *Peter v. Stern*, No. 05-20-00021-CV, 2020 WL 4783192, at *4 (Tex. App.—Dallas Aug. 18, 2020, pet. denied). O'Brien does not plead any facts showing it had a right to control Jordan Foster's actions or that it acted as a surety in any way. In fact, the third-party petition includes quotes from the Project Manual/Specifications showing that O'Brien did not have control over Jordan Foster:

§3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of Work under the Contract . . .

. . . .

§4.2.2 . . .The Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents . . .

§4.2.3 . . . The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for the acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the work.

Consequently, even construing O'Brien's third-party petition liberally in its favor, as we must at this stage, and accepting its factual allegations as true, we find there is no basis in law or fact for

9

O'Brien's common-law indemnity claim. As a result, the trial court clearly abused its discretion in part by denying Jordan Foster's Rule 91a motion to dismiss the claim.

### b. Statutory contribution claim

O'Brien presents contribution claims under two statutes. First, it claims it is entitled to contribution under Chapter 32 of the Texas Civil Practice and Remedies Code. Chapter 32 permits a "person against whom a judgment is rendered [], on payment of the judgment, a right of action to recover payment from each codefendant against whom judgmenet is also rendered." TEX. CIV. PRAC. & REM. CODE ANN. § 32.002. Based on the plain language of section 32.002, "a judgment adverse to the party seeking contribution is an essential prerequisite to contribution . . ." under Chapter 32. *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 21 (Tex. 1987); *see also Lopez v. Vaquera*, No. EP-12-CV-00427-DCG, 2013 WL 623567, at *13 (W.D. Tex. Feb. 19, 2013) (holding that contribution under chapter 32 did not apply because the defendant seeking contribution "has not had a judgment rendered against it . . . "). O'Brien does not allege in its third-party petition that it has had a judgment rendered against it. Consequently, the trial court clearly abused its discretion in not granting Jordan Foster's motion to dismiss O'Brien's claim under Chapter 32.

O'Brien also seeks contribution under Chapter 33 of the Texas Civil Practice and Remedies Code, which is Texas's comparative responsibility statute. Jordan Foster argues that Chapter 33 only applies in tort actions. And because First Texas is only seeking economic losses, according to Jordan Foster, this case is a contract dispute, not a tort case. Jordan Foster neglects to recognize, however, that in addition to tort claims Chapter 33 expressly applies to "any action brought under the Deceptive Trade Practices-Consumer Protection Act (Subchapter E, Chapter 17, Business & Commerce Code) in which a defendant, settling person, or responsible third party is found

responsible for a percentage of the harm for which relief is sought." TEX. CIV. PRAC. & REM. CODE ANN. § 33.002 a.2. Reading O'Brien's third-party petition liberally, it asserts that First Texas sued O'Brien, in part, based on violations of the DTPA. And to the extent O'Brien is found liable to First Texas, O'Brien claims Jordan Foster's acts or omissions that created "multiple latent construction defects" in the Facility "caused or contributed" to First Texas's harm. Based on these allegations, at this stage of the litigation, the Court cannot conclude that O'Brien's contribution claim under Chapter 33 is without legal basis. As a result, the trial court did not in part clearly abuse its discretion in denying Jordan Foster's Rule 91a motion. We conclude it did not abuse its discretion in denying the motion as it related to O'Brien's third-party claim under Chapter 33.

### c. Express warranty claim

Jordan Foster argues that O'Brien's express warranty claim has no basis in law for two reasons. First, it asserts that it could not have given O'Brien an express warranty because Jordan Foster and O'Brien do not have a contractual relationship. Second, it claims that even if an express warranty exists, it is barred by the statute of limitations.

We consider first Jordan Foster's argument that it could not have given O'Brien an express warranty because the parties did not have a contractual relationship. We agree with the general premise that an express warranty is "a 'creature of contract' and is 'contract-based.'" *1/2 Price Checks Cashed v. United Auto Ins. Co.*, 344 S.W.3d 378, 388 (Tex. 2011). But it is also true that no "special terms or forms is required to make a warranty." *Edwards v. Schuh*, 5 S.W.3d 829, 832 (Tex. App.—Austin, 1999, no pet.). Indeed, there is no requirement that an express warranty be a formal clause in a contract, it can be made orally or in a less formal writing. *Church & Dwight Co., Inc. v. Huey*, 961 S.W.2d 560, 569 (Tex. App.—San Antonio 1997, pet. denied) (citing *United States Pipe & Foundry Co. v. City of Waco,* 108 S.W.2d 432, 436 (Tex. 1937)). Here, O'Brien

alleges in its third-party petition that Jordan Foster provided both it and First Texas an express warranty in the December 21, 2016, Project Manual/Specifications:

> §3.5 The Contractor warrants to the Owner and Architect that-materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit . . .

Whether the Project Manual/Specifications ultimately governs the relationship between the parties is irrelevant at this stage of the litigation. We must take the allegations in O'Brien's third-party petition as true and construe the pleading liberally in its favor. *See Darnell,* 588 S.W.3d at 302. Consequently, we find the trial court did not clearly abuse its discretion in part in finding that O'Brien's third-party petition sufficiently alleges that Jordan Foster granted O'Brien an express warranty.

Jordan Foster next argues that the four-year statute of limitations governing express warranties expired before O'Brien filed its third-party petition. In support of its position, it cites to an April 25, 2019, letter O'Brien attached to its third-party petition in which First Texas complains to Jordan Foster that it had been having "basic operational problems with the Trane HVAC system continually over the past 16 months." Jordan Foster argues the letter demonstrates that First Texas took possession of the Facility in January 2018, which is sixteen months before the letter was written. This, according to Jordan Foster, is the date Jordan Foster finished rendering its services, and the four-year statute of limitations for express warranties began to run. And because O'Brien filed its original third-party petition on March 1, 2022—four years and two months later—its claim is barred.

We agree with Jordan Foster that express warranty claims are governed by the four-year statute of limitations established in Texas Civil Practice and Remedies Code § 16.051. *See Harvey v. Olshan Foundation Repair Company of Houston LLC,* No. 09-18-00467-CV, 2020 WL 7755692, at *9 n.33 (Tex. App.—Beaumont Dec. 30, 2020, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051. We disagree, however, that the April 25, 2019-letter establishes an accrual date for the statue of limitations in this case. It does not, as Jordan Foster argues, demonstrate that First Texas "was in possession of the premises for at least 16 months" at the time the letter was sent. All it establishes is that First Texas had been experiencing problems with the Trane HVAC system for sixteen months. The evidence may ultimately show that Jordan Foster's services to First Texas were complete or substantially complete four years before O'Brien filed its third-party petition. But no facts alleged in the third-party petition support Jordan Foster's assertion that the statute of limitations on O'Brien's express warranty claim had expired. Consequently, we find the trial court did not clearly abuse its discretion in denying Jordan Foster's motion to dismiss O'Brien's express warranty claim.

### d. Jordan Foster's argument raised for the first time in its petition is waived

Jordan Foster further argues in its petition that O'Brien's contract with First Texas "specifically exempts" O'Brien from liability for Jordan Foster's defective work. As a result, according to Jordan Foster, because "O'Brien is only responsible for its own negligent acts or omissions, there is no basis for claims for indemnity or contribution from" Jordan Foster "as First Texas'[s] recovery against O'Brien is limited to damages as a result of O'Brien's actions." O'Brien points out, however, that Jordan Foster did not raise this argument to the trial court. While Jordan Foster responds the argument was made in its motion to reconsider, that position is not supported by the record. Even if it had been asserted in the motion to reconsider, however, the trial court

13

denied the motion. Consequently, the trial court did not consider Jordan Foster's argument regarding O'Brien's liability being limited by its contract with First Texas. And we cannot hold that a trial court clearly abused its discretion in denying an argument not presented to it. *N & A Properties, Inc. v. PH Steel, Inc.*, 656 S.W.3d 556, 569 (Tex. App.—El Paso 2022, no pet.) ("To preserve error, a party must make a timely request, objection, or motion in the trial court with sufficient specificity to make the court aware of the complaint."). The argument is, therefore, waived.

## C.     No adequate remedy at law

Having found that the trial court clearly abused its discretion, at least in part, we must next consider the second element Jordan Foster is obligated to prove before it may be entitled to mandamus relief, that is, no adequate remedy at law. O'Brien argues that mandamus relief is inappropriate because Jordan Foster has an adequate remedy by direct appeal and the only prejudice it would suffer "is delay and expense due to [it] having to participate in the case through trial . . ." The Supreme Court of Texas, however, disagrees with O'Brien's position. It has held that mandamus relief is "appropriate to 'spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *In re Essex Insurance Company*, 450 S.W.3d 524, 528 (Tex. 2014) (quoting *In re John G. & Marie Stella Kenedy Memorial Foundation*, 315 S.W.3d 519, 523 (Tex. 2010)); *see also In re Farmers Texas County Mutual Insurance Company*, 621 S.W.3d 261, 266 (Tex. 2021) ("Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss."). Accordingly, the second element required to establish a party's entitlement to mandamus relief, is met.

As a result, because both elements were established, to the extent described, we conclude that mandamus is appropriate to correct in part, the trial court's improper denial of Jordan Foster's Rule 91a motion to dismiss. As a result, we sustain Jordan Foster's issue in part and overrule its issue in part. To that extent, mandamus is relief is warranted.

## MOTION TO STRIKE SUR-REPLY BRIEF

Also pending before the Court is Jordan Foster's motion to strike O'Brien's sur-reply to its own reply to O'Brien's response to the petition for writ of mandamus. "The rules of appellate procedure do not permit a 'sur-reply'" *In re KFC USA, Inc.*, No. 05-98-01116-CV, 1998 WL 427284, at *1 (Tex. App.—Dallas July 30, 1998, orig. proceeding); *see also In re Reiss*, No. 05-21-00600-CV, 2022 WL 500023, at *1 (Tex. App.—Dallas Feb. 18, 2022, orig. proceeding) (mem. op.) (striking a sur-reply brief). Moreover, O'Brien did not seek leave of the Court to file its sur-reply brief either before filing or contemporaneously. Consequently, Jordan Foster's motion to strike the sur-reply brief is granted.

## CONCLUSION

In sum, the trial court clearly abused its discretion in part, and did not clearly abuse its discretion in part, when it denied Jordan Foster's Rule 91a motion to dismiss. We conclude it clearly abused its discretion in relation to O'Brien's claims for common-law indemnity and contribution under Chapter 32 of the Texas Civil Practice and Remedies Code. We further conclude the trial court did not clearly abuse its discretion in denying the motion to dismiss regarding O'Brien's claim for contribution under Chapter 33 of the Texas Civil Practice and Remedies Code and their claim for breach of express warranty. We conditionally grant the writ of mandamus to the extent provided and direct the trial court to vacate its order denying the motion

to dismiss and re-issue it in accordance with this decision. The writ will only issue if the trial court fails to vacate and re-issue the order within a reasonable time period.

GINA M. PALAFOX, Justice

March 6, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.